**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JONATHON A. CLARK,

      Petitioner,                   Civil No. 2:10-CV-10748
                                            HONORABLE GERALD E. ROSEN
v.                                        CHIEF UNITED STATES DISTRICT JUDGE

DUNCAN MACLAREN,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO
APPEAL IN FORMA PAUPERIS**

Jonathon A. Clark, ("Petitioner"), presently confined at the Kinross Correctional

Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his *pro se* application, petitioner challenges his convictions for assault

with intent to commit murder, M.C.L.A. 750.83; and possession of a firearm during the

commission of a felony, M.C.L. A. 750.227b.  For the reasons that follow, the petition for

writ of habeas corpus is DENIED.

### I.  Background

Petitioner was convicted of the above offenses following a bench trial in the Wayne

County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the attempted robbery and shooting of Antonio Revis.
> As Revis was leaving a Detroit bar early one morning, a man approached
> him, demanded his Cartier eyeglasses, and fired several gunshots.  Revis

began to run and threw off his glasses.  He was shot twice, once in the leg and once in the buttock.  He ran until he reached a nearby police car.  The officers in the car put a description of the incident and the suspect over the radio.  A man who was sitting in his car in a nearby parking lot testified at trial that defendant approached, demanded that the man give him the vehicle, and tried to push him out of the driver's seat.  Just then, two police officers, who also identified defendant at trial, approached and defendant ran.  One of the officers pursued defendant and arrested him.

*******************************************************************************************

Defendant contests the sufficiency of the evidence identifying him as the person who shot Revis.  However, the circumstantial evidence in the form of witness testimony was sufficient to identify defendant as the perpetrator of the shooting.  At trial, a police officer testified that at approximately 1:45 or 2:00 a.m. on January 22, 2006, she and her partner responded to a police dispatch to the scene of a shooting at the Zoo Bar on Congress and Brush in Detroit.  As they were looking between cars in the parking lot across from the Zoo Bar, the police officer heard a male voice behind her.  When she turned around, she saw defendant, who met the description they had been given over the radio, trying to push his way into the driver's seat of an occupied white vehicle.  Defendant ran when he saw the police officers.  The other police officer testified that he chased defendant on foot, and arrested him a few minutes later.  The driver of the white vehicle also testified that he went to the Zoo Bar, but stayed in the parking lot.  Around 1:40 or 1:45 a.m., he heard gunshots and saw people running.  Then a man with blood on his face, who the driver identified at trial as defendant, approached and demanded the vehicle.  The driver testified that when a police officer approached carrying a gun, and defendant ran away.  A third police officer who took defendant to the hospital after his arrest, testified that he was instructed to do so because defendant had "scratches" on his face.  He also said there was blood on defendant's face.

In addition, one of the officers who took defendant to the hospital after he was arrested testified that, while they were in the police car, defendant said that Revis owed him $10,000, and that he had "dealt with" Revis.  Another police officer testified that, when Revis was brought into the hospital, defendant said that he had shot Revis, again said that Revis owed him $10,000, and said Revis had better repay him before he died.  Two other police officers who were also at the hospital testified that they heard defendant make similar statements.

*People v. Clark,* No. 272988, at 1, 7 (Mich.Ct.App. January 15, 2008).

Petitioner's conviction was affirmed on appeal.  *Id.*, *lv. den.* 481 Mich. 879, 748

N.W.2d 842 (2008). Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which was denied by the trial court. *People v. Clark,* No. 06-001737 (Wayne County Circuit Court, March 2, 2009). The Michigan appellate courts denied petitioner leave to appeal. *People v. Clark,* No. 291513 (Mich.Ct.App. July 8, 2009); *lv. den.* 485 Mich. 1009; 775 N.W.2d 788 (2009).

Petitioner subsequently filed a petition for writ of habeas corpus, which was held in abeyance while petitioner pursued post-conviction relief for a second time in the state courts. *Clark v. Woods*, No. 2:10-CV-10748; 2010 WL 1286435 (E.D. Mich. March 31, 2010).

Petitioner's second post-conviction motion for relief from judgment was denied by the trial court. *People v. Clark,* No. 06-001737 (Wayne County Circuit Court, July 21, 2010). The trial court subsequently denied petitioner's motion for reconsideration and the motion to supplement the successive motion for relief from judgment. *People v. Clark,* No. 06-001737 (Wayne County Circuit Court, January 4, 2011. The Michigan appellate courts denied petitioner leave to appeal. *People v. Clark,* No. 303026 (Mich.Ct.App. May 16, 2011); *lv. den.* 490 Mich. 968, 806 N.W.2d 500 (2011).

The case has now been reopened to the Court's active docket. In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds. Because of several spelling and grammatical errors in petitioner's habeas applications, the Court will paraphrase the claims rather than recite them verbatim:

> I. Where appellate counsel, having moved the trial court for an evidentiary hearing on the trial counsel's ineffectiveness withdrew the motion and failed to create a factual record supporting the sole claim raised on direct appeal, petitioner was deprived of his constitutional right to effective assistance of counsel on direct appeal.

3

II. Petitioner was denied his constitutional right to effective assistance of counsel on direct appeal where appellate counsel failed to challenge the sufficiency of the evidence to convict petitioner.

III. Petitioner's due process rights were violated, where the prosecution suppressed evidence which denied petitioner access to potentially exculpatory information.

IV. Petitioner was denied his right to due process under the 14th Amendment to the United States Constitution and under section 17 Article 1 of the Michigan Constitution, where he was actually innocent of crime.

V. Petitioner is entitled to a new trial based upon newly presented evidence, which support's his claim of actual innocence.

VI. Petitioner was deprived of his Fifth Amendment right against self-incrimination when he was never read his *Miranda* rights at the time of his arrest and any statements used against him was inadmissible.

VII. Petitioner was never allowed to challenge the out of court statements that were used against him at trial in the form of a "*Walker* hearing," to have any statements suppressed.

VIII. Petitioner Clark was deprived of his Sixth Amendment right to the effective assistance of counsel for his defense.

IX. Petitioner Clark is entitled to an evidentiary hearing to establish a factual record in support of his claims of ineffective assistance of trial and appellate counsel and actual innocence.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>       (2)     resulted in a decision that was based on an
>       unreasonable determination of the facts in light of the
>       evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).

5

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

6

### III.

**A.  Claims ## 1, 2, and 8.  Petitioner was not denied the effective assistance of appellate counsel.**

In his first, second, and eighth claims, petitioner alleges that he was deprived of the effective assistance of appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

 "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.

7

*See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

In his first claim, petitioner alleges that appellate counsel was ineffective for withdrawing her motion for a *Ginther* hearing [1] on petitioner's ineffective assistance of trial counsel claims. Appellate counsel had filed a motion for a *Ginther* hearing based on her claims that trial counsel had been ineffective for failing to prepare for trial, had failed to present a receipt which showed that the glasses that petitioner had stolen from the victim were actually his own glasses, for failing to raise a substantial defense, for failing to conduct a reasonable pretrial investigation, and for failing to investigate or obtain the results of a gunshot residue test that had been performed on petitioner following his arrest. Before the hearing could be conducted, the prosecutor produced the results of the gunshot residue test, which indicated that gunshot residue had been detected on all three samples that had been taken from petitioner. After receiving these test results, appellate counsel withdrew her motion for a *Ginther* hearing, although she still raised the ineffctive assistance of counsel claims before the Michigan Court of Appeals on the appeal of right.

Petitioner is not entitled to habeas relief on this claim for two reasons. First,

---

[1]   *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

8

appellate counsel's decision to raise the ineffective assistance of trial counsel claims without conducting an evidentiary hearing was a "reasonable recognition that the allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the [appellate] court to make a fair determination of the sixth amendment issue." *Young v. Miller,* 883 F. 2d 1276, 1280 (6th Cir. 1989).

Moreover, assuming that appellate counsel was ineffective for failing to proceed with a *Ginther* hearing, petitioner was not prejudiced by appellate counsel's failure to do so because the underlying ineffective assistance of trial counsel claims are meritless.

Petitioner first claims that trial counsel was ineffective for failing to present evidence that petitioner owned Cartier eyeglasses that were the same as the ones worn by the victim. The Michigan Court of Appeals rejected this claim:

> Defendant cannot overcome the presumption that counsel's decision not to introduce the receipt or other evidence that defendant owned designer glasses was a matter of trial strategy. Even if the trier of fact believed that defendant owned similar or the same glasses before or at the time of shooting, defendant has failed to articulate how this evidence supports the conclusion that defendant had no motive to commit the crimes charged. Rather, the trier of fact may have concluded that it was more than coincidental that defendant, who was arrested near the scene of an attempted robbery of a pair of $1,550 Cartier eyeglasses, happened to have owned and worn identical eyeglasses.

*Clark,* No. 272988, Slip. Op. at 3.

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses or present evidence are matters of trial strategy. *See Hutchison v. Bell*, 303 F. 3d 720, 749 (6th Cir. 2002). In the present case, trial counsel may have reasonably determined that evidence that petitioner owned a pair of eyeglasses

that were identical to the eyeglasses taken from the victim during the robbery would have been more prejudicial than exculpatory, therefore, the Michigan Court of Appeals did not unreasonably apply *Strickland* in rejecting petitioner's claim. *See Greenwell v. Elo*, 77 Fed. Appx. 790, 793 (6th Cir. 2003).

Petitioner next contends that trial counsel was ineffective for failing to obtain results of the gunshot residue tests.  However, as the Michigan Court of Appeals concluded in rejecting petitioner's claim, the gunshot residue tests indicated that petitioner had gunshot residue on his hands.  A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted).  Because this evidence was not exculpatory, petitioner was not prejudiced by counsel's failure to obtain the results of the gunshot residue test.

Petitioner further argues that had he been made aware of the gunshot residue tests, he might have been willing to negotiate and accept a plea agreement.  Petitioner has presented no evidence to this Court or to the state courts that the prosecutor was prepared to offer petitioner a plea bargain.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  In light of the fact that there is no evidence that the prosecutor ever offered petitioner a favorable plea bargain, petitioner is unable to establish that trial counsel was ineffective for failing to properly advise petitioner regarding a non-existent plea offer. *See e.g. Guerrero v. U.S.,* 383 F. 3d 409, 419 (6th Cir. 2004).

Petitioner lastly contends that trial counsel was ineffective for failing to present a

10

defense theory, instead relying on the weaknesses of the prosecution's case to defend petitioner.  Petitioner, however, has not alleged a particular defense theory that counsel should have raised.  In the absence of any viable defense theory, counsel was not ineffective in simply pursuing a "general reasonable doubt defense" which attacked the strength of the prosecutor's case. *See Kowalak v. Scutt,* 712 F. Supp. 2d 657, 702 (E.D. Mich. 2010).

In light of the fact that petitioner's ineffective assistance of trial counsel claims are without merit, petitioner is unable to establish that he was prejudiced by appellate counsel's failure to conduct a *Ginther* hearing. *See e.g. Davis v. Booker,* 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); *rev'd on other grds,* 589 F. 3d 302 (6th Cir. 2009).

In his second claim, petitioner contends that appellate counsel was ineffective for failing to raise a sufficiency of evidence claim on his appeal of right.  In his eighth claim, petitioner contends that appellate counsel was ineffective for failing to raise in her appeal brief some of the additional claims that petitioner raises in his original and amended habeas petition.  Petitioner, however, raised a sufficiency of evidence claim, several ineffective assistance of trial counsel claims, and a claim that the prosecutor had withheld potentially exculpatory evidence in the *pro se* supplemental Standard 4 Brief that he filed on his own behalf on his appeal of right in addition to the appellate brief that was filed by appellate counsel. [2]  The Michigan Court of Appeals addressed and rejected petitioner's sufficiency of evidence, ineffective assistance of counsel, and exculpatory evidence

---

[2]  See Appellant Supplemental Brief on Appeal [this Court's Dkt. # 13-6].  Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

claims. *Clark,* No. 272988, Slip. Op. at 2-7.  Because the Michigan Court of Appeals considered and rejected the claims that were raised by petitioner in his supplemental brief, petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel. *See Bentley v. Bock,* 239 F. Supp. 2d 686, 696-97 (E.D. Mich. 2002).

Petitioner finally claims that appellate counsel was ineffective for failing to raise on his direct appeal his claims involving the alleged violation of his Fifth Amendment right against self-incrimination.  As discussed below, petitioner's Fifth Amendment claim is without merit.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his first, second, or eighth claims.

**B.  Claim # 3.  Petitioner has failed to show that the prosecutor withheld exculpatory evidence.**

In his third claim, petitioner contends that the prosecutor failed to disclose the gunshot residue test results to the defense prior to trial.

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

12

different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the gunshot residue tests indicated that petitioner had gunshot residue on his hands, which would tend to support the prosecutor's charges that petitioner had shot a firearm.  The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *See Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998).  The failure to turn over inculpatory evidence does not violate *Brady. See United States v. Henry,* 71 Fed. Appx. 493, 502 (6th Cir. 2003).

Petitioner, however, further alleges that the police violated his due process rights by failing to preserve the gunshot residue tests.

The *Brady* rule extends to evidence that is not suppressed but is altered or destroyed. *See California v. Trombetta,* 467 U.S. 479, 489 (1984).  For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89.

13

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence of absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n.

Petitioner's claim fails because the gunshot residue tests were not destroyed prior to petitioner's trial, but only after petitioner had been convicted. Both *Trombetta* and *Youngblood* involve the pre-trial destruction of evidence. In the present case, there is no evidence that this evidence was destroyed until after petitioner's conviction. There is no

14

clearly established Supreme Court law that the post-conviction destruction of evidence is a due process violation, thus, petitioner's claim is non-cognizable on federal habeas review. *See Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007).

Petitioner's claim also fails because his contention that any of this evidence contained exculpatory material is entirely speculative. *See United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996).  "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Id.* (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Finally, petitioner has failed to establish that the police acted in bad faith when they disposed of this evidence.  Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum,* 276 F. Supp. 2d at 683.  Petitioner is not entitled to habeas relief on his third claim.

### D.  Claims # 4 and 5.  Petitioner is not entitled to habeas relief on any freestanding actual innocence claim.

In his fourth and fifth claims, petitioner contends that he is entitled to habeas relief because he is actually innocent of the charges that he was convicted of. [3]

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims

---

[3]  Respondent contends that petitioner's fourth, fifth, and sixth claims are procedurally defaulted because he raised them only for the first time in his second post-conviction motion for relief from judgment and the trial and appellate courts rejected petitioner's second motion pursuant to M.C.R. 6.502(G), which prohibits a defendant in Michigan from filing a successive post-conviction motion unless there has been a retroactive change in the law or the defendant has newly discovered evidence.  In light of the fact that petitioner claims that the evidence that he presented in his second motion for relief from judgment was newly discovered, for the purposes of judicial economy, it would be easier for the Court to address the merits of petitioner's claims rather than determine whether petitioner's claims are defaulted.

15

of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999).  Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d at 854-55(collecting cases).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claims, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55.  Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context. Petitioner would therefore not be entitled to relief for his fourth and fifth claims under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

### E.  Claim # 6.  Petitioner is not entitled to habeas relief on his *Miranda* claim.

In his sixth claim, petitioner contends that he is entitled to habeas relief because the prosecutor introduced statements made by petitioner to the police before he had been

16

advised of his *Miranda* rights.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.
> *Miranda,* 384 U.S. at 444.

The special procedural safeguards outlined in *Miranda* are required not merely when a suspect is taken into custody, but instead where a suspect in custody is subjected to interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980). "'Interrogation', as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* *Miranda* warnings are required whenever a person in custody is subject either to express questioning or its "functional equivalent." *Id.,* at 300-301. Thus, for *Miranda* purposes, the term "interrogation" refers not only to express questioning of a suspect by law enforcement officials, but also to "any words or actions on the part of the police (other than those normally attendant to [an] arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

17

A review of the trial court record shows that petitioner was not subjected to custodial interrogation by the police following his arrest, but voluntarily and spontaneously made these statements to the police

Where a defendant makes a voluntary statement without being questioned or pressured by the police, the statements are admissible despite the absence of *Miranda* warnings. *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir.1997) (internal citations omitted); *See also Terry v. Bock,* 208 F. Supp. 2d 780, 789 (E.D. Mich. 2002).  "[I]t is well settled that a volunteered statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." *United States v. Thornton*, 17 F.Supp.2d 686, 693 (E.D. Mich. 1998). Because the petitioner made these statements to the police without being questioned or pressured by the police, petitioner is not entitled to habeas relief on his *Miranda* claim. *See Jones v. Smith,* 244 F. Supp. 2d 801, 812 (E.D. Mich. 2003).

## F.  Claims ## 7 and 9.  Petitioner is not entitled to an evidentiary hearing.

In his seventh and ninth claims, petitioner requests an evidentiary hearing on his ineffective assistance of counsel and *Miranda* claims.

When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary

18

hearing is appropriate." *Id.* If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.* Stated differently, a habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). Because the petitioner's claims lack merit, petitioner is not entitled to an evidentiary hearing.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D.

Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.


<u>s/Gerald E. Rosen</u>
Chief Judge, United States District Court

Dated:  January 14, 2013


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 14, 2013, by electronic and/or ordinary mail.


<u>s/Julie Owens</u>
Case Manager